UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIKE JONES, | ) | 1:05CV0659 |
| | ) | |
| Petitioner | ) | JUDGE PATRICIA GAUGHAN |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| MARGARET BRADSHAW, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND RECOMMENDED |
| | ) | <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Mike Jones ("Jones") has filed a petition pro se for a writ of

habeas corpus regarding his 2001 conviction for murder, with a firearm

specification,  in the Cuyahoga County, Ohio, Court of Common Pleas.  The named

respondent is Margaret Bradshaw ("Bradshaw"), Warden of Mansfield Correctional

Institution.  The petition is based on thirteen grounds, specifically:

> 1.  The Ohio Court of Appeals violated petitioners due process rights
> under the Fourteenth Amendment of the United States Constitution
> and Article I Section 10 of the Ohio Constitution when it failed to grant
> petitioner a reopening of his appeal after he showed a colorable claim
> of ineffective assistance of appellate counsel pursuant  to appellate
> rule 26(B)(5).

> 2.  The petitioner was denied the effective assistance of appellate
> counsel in violation of his Fourteenth Amendment rights under the
> United States Constitution and Article I Section 10 of the Ohio
> Constitution for counsels failure to raise the issue that petitioner was
> denied effective assistance of trial counsel due to trial counsels failure
> to request the proper lesser included offense instructions on the
> petitioners murder charge.

3.  The petitioners was denied due process of law when evidence of gang affiliation was presented with no limiting instruction in violation of the Fourteenth Amendment under the U.S. Constitution.

4.  The petitioner was denied due process of law when counsel was not furnished with a summary of petitioners oral statements in violation of the Fourteenth Amendment to the U.S. Constitution.

5.  Petitioner was denied due process of law when he was not informed as to the nature and cause of the accusation in violation of the Fourteenth Amendment under the United States Constitution.

6.  The petitioner was denied due process of law when the court would not instruct the jury on any lesser included offense in violation of petitioners Fourteenth Amendment rights under the United States Constitution.

7.  Petitioner was denied due process of law when the indictment was amended by the prosecutor during the course of trial in his opening statements and closing arguments in violation of the Fourteenth Amendment under the United States Constitution.

8.  The petitioner was denied due process of law when the court amended the statute and allowed the jury to convict of the jury's sense of moral outrage in violation of the Fourteenth Amendment under the United States Constitution.

9.  The petitioner was denied due process of law when the court instructed upon the non-offense of transferred intent in violation of the Fourteenth Amendment under the United States Constitution.

10.  The petitioner was denied due process of law when the court constructively amended the indictment and the statute by instructing on the doctrine of transferred intent in violation of the Fourteenth Amendment under the United States Constitution.

11.  The petitioner was denied due process of law when he was allowed to be convicted for the intervening act of another in violation of the Fourteenth Amendment under the United States Constitution.

12.  Petitioner was denied the effective assistance of trial counsel in violation of his  [rights under the] Sixth and Fourteenth Amendments under the United States Constitution.

13.  The petitioner was denied due process of law and equal protection of the law when he was sentenced for murder to fifteen (15) years to life for the functional equivalent of Involuntary Manslaughter in violation of the Fourteenth Amendment to the U.S. Constitution.

(Doc. 1.)

Respondent argues that the eleventh ground is procedurally defaulted.  The respondent contends that the other grounds are without merit.  (Doc. 7.)  Jones has filed a traverse, defending his motion for the writ.  (Doc. 11.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

The record reflects that on August 15, 2001, a white Chevrolet carrying several men drove down E. 120th Street and stopped at the intersection of E. 120th Street and Kelton Avenue alongside Hurlon Hill, who was sitting on a bicycle at that intersection. A male from the vehicle asked Hill: "Are you Rockland?" When Hill answered affirmatively, the male said: "Y'all killed my dude." Hill, aware that a Rockland member had killed someone, became concerned that the males in the vehicle were looking to retaliate against Rockland for that killing. He jumped off his bike, yelling "dudes coming", and ran to 11811 Kelton Avenue, a Rockland hangout, alerting Mike Jones, Sundiata Langford, and Jujuan Norman, all of whom were present at that time. The Chevy then drove past 11811 Kelton Avenue, swung around squealing its tires and headed back to the intersection at E. 120th Street, swerving to hit Hill's abandoned bicycle, and continuing north on E. 120th Street. Jones, Langford, and Norman, having each grabbed a gun, began shooting in the direction of the car.

Meanwhile, three children, Warren Culbreath, John Knight, Jr., and Rodney Williams, sitting on the porch of Warren's house on East 120th Street, near the Kelton intersection, watched these events. Warren and Rodney walked down the street to get a better view. When LaShante Culbreath, Warren's sister, heard the squeal of car tires and gunshots, she called the boys and they quickly ran inside. A bullet then came through the wall of the home, struck 12- year-old Warren in the back, and lodged in his skull, killing him.

A forensic test later showed that the bullet had entered the house from the direction of Kelton Avenue. In addition, the police described the bullet recovered from his body as a 7.62 round of ammunition. They later recovered a 7.62 shell casing from 11815 Kelton Avenue, the property immediately adjacent to 11811.

When describing the incident to the police, Jones, Langford, and Norman each admitted firing a weapon from 11811 Kelton in the direction of the white car, but none admitted to using a weapon capable of firing a 7.62 round of ammunition.

Thereafter, a grand jury indicted Jones, Norman, and Langford for the murder of Warren, charging that they caused the death of Warren Culbreath as a proximate result of committing or attempting to commit an offense of violence that is a felony of the first or second degree, in violation of Section 2903.02 of the Revised Code. The indictment also included a three year firearm specification for Jones.

At their joint trial, Hill testified for the state that the day after the shooting, Jones told him that the guys in the white car fired shots at him, and he, Langford, and Norman fired back.

Detective Denise Kovach read a written statement which Jones had given to the police. In this statement, Jones claimed that after Hill came running down the street screaming about the approaching vehicle, he grabbed his gun which had been hidden under some weeds and dirt in the driveway of the house at 11811 Kelton. He stated that two males hanging out of the white vehicle shot at him and Norman, and continued to shoot while the vehicle proceeded to the intersection of E. 120th Street and Kelton. He stated that he had used a .22 pistol, which he disposed of the next day. He also stated that the males in the white vehicle were from the Bloods and the shooting related to retaliation over the death of Maurice Freeman. After the state's case in chief, which included 16 other witnesses, Jones moved for acquittal, but the court denied that motion. The defense presented no witnesses at trial.

Following its deliberations, the jury returned verdicts finding Jones, Langford, and Norman guilty of murder and also guilty of the firearm specification. The court subsequently sentenced Jones to a term of incarceration of 15 years to life, consecutive with the three year term on the firearm specification.

(Doc. 9, Respondent's Exhibit (RX) 8, at 2-5; <u>State v. Jones</u>, No. 80737, 2002 WL 31478933, at *1-*2 (Ohio Ct. App. Nov. 7, 2002).)

A.  Direct appeal

Jones, through his appellate counsel, raised thirteen assignments of error on his direct appeal:

1.  Defendant was denied due process of law when evidence of gang affiliation was presented with no limiting instruction.

2.  Defendant was denied due process of law when  counsel was not furnished with summaries of defendant's oral statements.

3.  Defendant was denied due process of law when he was not informed as to the nature and cause of the accusation.

4.  Defendant was denied due process of law when the court would not instruct the jury on any lesser included offense.

5.  Defendant was denied due process of law when the indictment was amended by the prosecutor during the course of trial in his opening statements and closing argument.

6.  Defendant was denied due process of law when the court did not properly and fully instruct the jury on aiding and abetting.

7.  Defendant was denied due process of law when the court amended the statute and allowed the jury to convict on the jury's sense of moral outrage.

8.  Defendant was denied due process of law when the court instructed upon the non-offense of transferred intent.

9.  Defendant was denied due process of law when the court constructively amended the indictment and the statute by instructing on the doctrine of transferred intent.

10.  Defendant was denied due process of law when he was allowed to be convicted for the intervening act of another.

11.  Defendant was denied effective assistance of counsel.

12.  Defendant was denied due process of law when his motion for judgment of acquittal was overruled.

13.  Defendant was denied due process of law and equal protection of the law when he was sentenced for murder to fifteen (15) years to life for the functional equivalent of involuntary manslaughter.

(Doc. 9, RX 5, appellate brief.)  On Nov. 7, 2002, the Ohio Court of Appeals affirmed

Jones's convictions.  (RX 8, at 30; State v. Jones, No. 80737, 2002 WL 31478933, at

*14 (Ohio Ct. App. Nov. 7, 2002).)

On Jan. 10, 2003, through counsel, Jones appealed to the Ohio Supreme

Court, raising the following thirteen propositions of law:

1.  A defendant is denied due process of law when evidence of gang affiliation is presented and the court fails to give any limiting instruction.

2.  A defendant is denied due process of law when  counsel has not been furnished any summary of oral statements of a defendant.

3.  A defendant is denied due process of law when he is not informed as to the nature and cause of the accusation.

4.  A defendant is denied due process of law when, in a murder prosecution, no instruction is given on any lesser included offense.

5.  A defendant is denied due process of law when the indictment is amended by the prosecutor during the course of trial and opening statements and closing argument.

6.  A defendant is denied due process of law when the court fails to give a full and complete instruction on aiding and abetting.

7.  A defendant is denied due process of law when the court amended the statute and allows a jury to convict on its sense of moral outrage.

8.  A defendant is denied due process of law when the court instructed upon the non-offense of transferred intent.

9.  A defendant is denied due process of law when the court constructively amends an indictment and statute by instructing on the doctrine of transferred intent.

10.  A defendant is denied due process of law when the court allows defendant to be convicted of murder for the intervening act of another.

11.  A defendant is denied effective assistance of counsel where errors and omissions are committed by trial counsel prevented defendant from having a fair trial.

12.  A defendant is denied due process of law when he is convicted of murder where there is insufficient evidence to permit a rational factfinder to return a verdict of guilty.

13.  A defendant is denied due process of law and equal protection of the law when he is sentenced for murder for the functional equivalent of involuntary manslaughter.

(Doc. 9, RX 11.)

On April 2, 2003, the Ohio Supreme Court denied Jones leave to appeal and

dismissed the appeal as not involving any substantial constitutional question.  (Doc.

9, RX 13; State v. Jones, 98 Ohio St.3d 1513, 786 N.E.2d 63 (2003)).

Jones filed also a motion pro se for delayed appeal to the state high court on

Feb. 18, 2003, based on the following thirteen propositions of law:

1.  Appellant was denied due process of law in violation of the Fourteenth Amendment under the United States Constitution when evidence of gang affiliation was presented at his trial with no limiting instruction.

2.  The appellant was denied his Fourteenth Amendment rights under due process of law when counsel was not furnished with summaries of appellants oral statements.

3.  Appellant was denied due process of law under the Fourteenth Amendment when he was not informed as to the nature and cause of the accusation.

4.  The appellant was denied due process of law under the United States Constitution after the court refused to instruct the jury on any lesser included offenses.

5.  The appellant was denied due process of law when the indictment was amended by the prosecutor during the course of trial in his opening statements and closing argument.

6.  The appellant was denied due process of law under the United States Constitution after the court did not properly and fully instruct the jury on aiding and abetting.

7.  The appellant was denied due process of law when the court amendment [*sic*] the state and allowed the jury to convict on the jury's sense of moral outrage.

8.  The appellant was denied due process of law when the court instructed upon the non-offense of transferred intent.

9.  Appellant was denied due process of law when the court constructively amended the indictment and the statute by instructing on the doctrine of transferred intent.

10.  Appellant was denied due process of law when he was allowed to be convicted for the intervening act of another.

11.  The appellant was denied his right to effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution.

12.  The appellant was denied due process of law when his motion for judgment of acquittal was overruled in violation of the Fourteenth Amendment under the United States Constitution.

13.  The appellant was denied due process of law and equal protection under the law when he was sentenced for murder to fifteen years to life for the functional equivalent of involuntary manslaughter.

(Doc. 9, RX 14.)  The court denied his motion for delayed appeal on April 2, 2003.

(Doc. 9, RX 15; <u>State v. Jones</u>, 98 Ohio St.3d 1509, 786 N.E.2d 60 (2003).)

<u>B.  Petition for Post-conviction Relief</u>

While his direct appeal was pending, Jones filed a petition pro se for post-conviction relief in the trial court, pursuant to Ohio Rev. Code § 2953.21, on Sept. 23, 2002.  (Doc. 9, RX 16.)  The trial court denied the petition on Sept. 4, 2003. (Doc. 9, RX 21.)

Jones appealed.  His initial appeal was denied as untimely, but on reconsideration, the court allowed him to file a delayed appeal.  (RX 22-24.)  He raised a single proposition of law:

> The trial court abused its discretion and violated appellants Fourteenth Amendment rights under the United States Constitution and Article I Section 10 of the Ohio Constitution by dismissing appellants petition for post-conviction relief pursuant to O.R.C. 2953.21 after appellant showed a prima facie showing of how he received ineffective assistance of trial counsel for counsels failure to investigate and call a vital defense witness who's testimony could have exonerated his client.

(Doc. 9, RX 25.)  The trial court's decision was upheld on appeal.  (Doc. 9, RX 27; <u>State v. Jones</u>, No. 83601, 2004 WL 1631122 (Ohio Ct. App. July 22, 2004).)

<u>C. Application to Re-open Appeal</u>

While his petition for post-conviction relief was pending, Jones moved, under Ohio App.R. 26(B), to re-open his original appeal on March 10, 2003, on the grounds that appellate counsel was ineffective.  Jones presented the following assignment of error:

> The appellant was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution for counsel's failure to raise the issue that appellant was denied effective assistance of trial counsel due to trial counsel's failure to request jury instructions on the lesser included offenses of murder.

(Doc. 9, RX 28.)

The Court of Appeals denied his application to re-open on Aug. 20, 2003, ruling that his appellate counsel did not render ineffective assistance.  (Doc. 9, RX 30; State v. Jones, No. 80737, 2003 WL 21981989 (Ohio Ct. App. Aug. 20, 2003).)

On Oct. 2, 2003, Jones again appealed to the Ohio Supreme Court, raising the following two propositions of law:

> 1.  The Ohio Court of Appeals violated appellant's due process rights under the Fourteenth Amendment of the United States Constitution when it failed to grant appellant a reopening of his appeal after he showed a colorable claim of ineffective assistance of appellate counsel pursuant  to Appellate Rule 26(B)(5).
>
> 2.  The appellant was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution for counsels failure to raise the issue that appellant was denied effective assistance of trial counsel due to trial counsel's failure to request the proper lesser included offenses instructions on the appellant's murder charge.

(Doc. 9, RX 31.)  The court denied his appeal on Dec. 10, 2003.  (State v. Jones, 100 Ohio St.3d 1532, 800 N.E.2d 48 (2003).)

Jones filed this federal petition for a writ of habeas corpus pro se on Dec. 22, 2004.  (Doc. 1.)  The respondent filed an answer and return of writ on Mar. 24, 2005.  (Doc. 7.)  The petitioner has filed a traverse.  (Doc. 11.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in <u>Williams v. Taylor</u>, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2002).  <u>See also</u> <u>Lorraine v. Coyle</u>, 291 F.3d 416, 421-422 (6th Cir. 2002), <u>cert. denied</u>, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  <u>Williams</u>, 529 U.S. at 405.  <u>See also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  <u>Williams</u>, 529 U.S. at 410-12; <u>Lorraine</u>, 291 F.3d at 422.

Jones has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by

lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th

Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519

(1972) (per curiam)).  Other than that, no special treatment is afforded litigants

who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993)

(strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th

Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

Several of the grounds put forward by Jones allege violations of the Ohio

Constitution.  The question before this federal habeas court is whether the state

court decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States.

Federal habeas relief is not available for a claimed violation of state law, thus any

alleged violation of the Ohio Constitution is not properly before this court.  See

Lewis v. Jeffers, 497 U.S. 764, 780 (1990).


## III.  PROCEDURAL DEFAULT

The respondent argues that Jones has procedurally defaulted his eleventh

ground, because he failed to make a contemporaneous objection at trial.  (Doc. 7, at

11-16.)

A habeas petitioner cannot obtain relief unless he has completely exhausted

his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell

v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d

533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  The exhaustion requirement

is satisfied when the highest court in the state has been given a full and fair

opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th
Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  A
petitioner cannot circumvent the exhaustion requirement by failing to comply with
state procedural rules.  Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because
the prisoner failed to meet a state procedural requirement, the state judgment rests
on independent and adequate state procedural grounds, barring federal habeas
relief.  Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977);
Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000).  Thus, where a state
prisoner has procedurally defaulted his federal claims in state court, habeas review
of those claims is barred "unless the prisoner can demonstrate cause for the default
and actual prejudice as a result of the alleged violation of federal law, or
demonstrate that failure to consider the claims will result in a fundamental
miscarriage of justice."  Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750).

The court considers four factors to determine whether a claim has been
procedurally defaulted:  (1) the court must determine whether there is a state
procedural rule that is applicable to the petitioner's claim, and whether the
petitioner failed to comply with the rule; (2) the court must decide whether the state
courts actually enforced the procedural sanction; (3) the court must decide whether
the state procedural forfeiture is an adequate and independent state ground on
which the state can rely to foreclose review of the federal claim; and, (4) the
petitioner must demonstrate that there was cause for him not to follow the
procedural rule, and that he was actually prejudiced by the alleged constitutional

error.  <u>Buell</u>, 274 F.3d at 348 (citing <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir.

1986)); <u>Jacobs v. Mohr</u>, 265 F.3d 407, 417 (6th Cir. 2001) (quoting <u>Maupin</u>).

Here, the court of appeals found that Jones could not challenge the jury

instructions on appeal, because he had not lodged a timely objection at trial.  (RX 8,

at 13; <u>Jones</u>, 2002 WL 31478933, at *6.)  Ohio's contemporaneous objection rule is

an adequate and independent state ground on which the state can rely to foreclose

habeas review.  <u>Gulertekin v. Tinnelman-Cooper</u>, 340 F.3d 415, 424 (6th Cir. 2003);

<u>Loza v. Mitchell</u>, No. C-1-98-287, 2002 WL 1580520, at *28-*30 (S.D. Ohio June 11,

2002) (citing <u>Scott v. Mitchell</u>, 209 F.3d 854, 867-871 (6th Cir.), <u>cert. denied</u>, 531

U.S. 1021 (2000)).  <u>See generally</u> <u>Wainwright</u>, 433 U.S. at 86-88 (contemporaneous

objection rule adequate and independent state ground).   Thus, the first three

<u>Maupin</u> factors are satisfied.

Jones has failed to demonstrate that there was cause for his failure to follow

the procedural rule.  <u>See generally</u> doc. 11.  To establish cause, the petitioner must

show that "some objective factor external to the defense" prevented his compliance

with the state's procedural rules.  <u>Coleman</u>, 501 U.S. at 753; <u>Bonilla v. Hurley</u>, 370

F.3d 494, 498 (6th Cir. 2004) (per curiam), <u>cert. denied</u>, 543 U.S. 989 (2004) (quoting

<u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  Because Jones has not shown cause,

it is unnecessary to consider whether he was prejudiced[1] by the default.  <u>Murray</u>,

---

[1]In any event, as the state court of appeals determined, an objection based on
the "intervening act" instruction would have been futile, because an instruction on
intervening cause was not warranted.  Plus, the instruction as given was proper, "a
verbal recitation" of the relevant Ohio Jury Instructions.  (RX 8, at 21; <u>Jones</u>, 2002
WL 31478933, at *9.)  <u>See, e.g.</u>, <u>Hayes v. York</u>, 311 F.3d 321, 327 (4th Cir. 2002),
<u>cert. denied</u>, 538 U.S. 979 (2003) ("contemporaneous objection would have changed

477 U.S. at 494; <u>Shabazz v. Ohio</u>, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir.

June 18, 1998) (TABLE, text in WESTLAW).

Jones has procedurally defaulted his eleventh ground.


## IV.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The first ground alleges a due process violation in the failure to reopen his

appeal "after [Jones] showed a colorable claim of ineffective assistance of appellate

counsel."  The second ground is based on the ineffective assistance of appellate

counsel claim itself, arguing that appellate counsel failed to raise the issue that

"petitioner was denied effective assistance of trial counsel due to trial counsels

failure to request the proper lesser included offense instructions on the petitioners

murder charge."  Jones argues that trial counsel should have requested instructions

on voluntary or involuntary manslaughter.  (Doc. 1, memorandum in support

("memo"), at 13.)

The respondent asserts that the first two grounds, alleging ineffective

assistance of appellate counsel, have no merit.  (Doc. 7, at 20-24.)

The court of appeals properly analyzed the claim under <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668 (1984).  <u>See also</u> <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985)

(defendant entitled to effective assistance of counsel on direct appeal).  Under

<u>Strickland</u>, judicial scrutiny of an attorney's work must be highly deferential.  The

state court found that counsel's performance was not deficient for several reasons,

_____

nothing").

including "the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions."  (Doc.9, RX 30, at 3; <u>Jones</u>, 2003 WL 21981989, at *1, citing <u>Jones v. Barnes</u>, 463 U.S. 745 (1983).)  The court noted that "appellate counsel vigorously argued that the trial court had the constitutional duty to instruct on involuntary manslaughter and reckless homicide," and declined to second guess the decision to "argue these issues directly rather than indirectly through the lens of ineffective assistance of trial counsel."  (RX 30, at 4; <u>Jones</u>, 2003 WL 21981989, at *2.)  In addition, the court pointed out that:

> Appellate counsel's review of the record revealed that prejudice could not be shown. Trial counsel did seek instructions on lesser-included offenses, but the trial judge refused to give any such instructions.

(RX 30, at 5; <u>Jones</u>, 2003 WL 21981989, at *2.)

Jones has failed to demonstrate that the state court decisions on the issue of ineffective assistance of counsel were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.


## V.  EVIDENTIARY RULING

The third ground of the petition is that Jones was denied due process of law when evidence of gang affiliation was presented with no limiting instruction.  The respondent points out that habeas relief is not available to remedy a state court's allegedly faulty evidentiary rulings, unless the ruling is so prejudicial that it amounts to a denial of due process.  (Doc. 7, at 25.)

The first assignment of error in Jones' direct appeal was:  "Defendant was denied due process of law when evidence of gang affiliation was presented with no limiting instruction."  However, his argument on this point focused solely on the admissibility of the evidence.  <u>See, e.g.</u>, RX 5, at 7 ("This evidence should not have been allowed.")   The state court of appeals responded to the admissibility arguments presented by Jones.  <u>See</u> RX 8, at 5-6; <u>Jones</u>, 2002 WL 31478933, at *2-*3.)

The "clearly established rule" is that errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not within the purview of a federal habeas court.  <u>Cooper v. Sowders</u>, 837 F.2d 284, 286 (6th Cir. 1988).  <u>See also</u> <u>Johnson v. Karnes</u>, 198 F.3d 589, 593 n.3 (6th Cir. 1999) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991)).  Only where a violation of the state's evidentiary rule has resulted in the denial of fundamental fairness, resulting in a due process violation, will habeas corpus relief be appropriate.  <u>Brown v. O'Dea</u>, 227 F.3d 642, 645 (6th Cir. 2000), <u>cert. denied</u>, 532 U.S. 1012 (2001); <u>Cooper</u>, 837 F.2d at 286.

This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings.  <u>Small v. Brigano</u>, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).  <u>See generally</u> <u>Lewis</u>, 497 U.S. at 780 (habeas relief not available for claimed violation of state law); <u>Estelle</u>, 502 U.S. at 67-68, 72.

The Ohio Court of Appeals stated that Rule 404(B) of the Ohio Rules of Evidence permits evidence of a defendant's other crimes or wrongs to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident.  (RX 8, at 5; <u>Jones</u>, 2002 WL 31478933, at *2.)  The court found that "the evidence regarding the gang affiliation had been introduced to establish motive, specifically, that Jones and his codefendants caused Warren's death as a result of a gang-related shooting," and thus the evidence was permissible under Rule 404(B). (RX 8, at 6; <u>Jones</u>, 2002 WL 31478933, at  *3.)

A defendant's due process rights are not violated by the admission of the relevant "other acts" evidence.  <u>Estelle</u>, 502 U.S. at 69-70; <u>Coleman v. Mitchell</u>, 268 F.3d 417, 439-440 (6th Cir. 2001), <u>cert. denied</u>, 535 U.S. 1031 (2002).  <u>See, e.g.</u>, <u>Duong v. McGrath</u>, No. 03-16918, 2005 WL 736680 (9th Cir. April 1, 2005) (gang evidence relevant to establish motive); <u>Windham v. Merkle</u>, 163 F.3d 1092, 1103-1104 (9th Cir. 1998) (evidence that defendant was gang member relevant to establish motive).  Because the evidence was determined to be relevant as to motive, Jones has not shown a due process violation.

Jones has failed to establish that the state court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.


## VI.  DISCOVERY VIOLATION

The third ground of the petition is that Jones was denied due process of law when his counsel was not furnished with a complete summary of his oral statements.

Although Jones captions this as a due process violation, his memorandum in support simply argues a violation of Ohio R. Crim. P. 16(B)(1)(a).  (Doc. 1, memo, at

19-21.)  Likewise, his brief on appeal characterized the claim as a violation of Rule 16 (doc. 9, RX 5, at 7-8), and the Ohio Court of Appeals addressed this claim as a state law issue.  See RX 8, at 6-9; Jones, 2002 WL 31478933, at *3-*4.  An alleged violation of Ohio R. Crim. P. 16(B)(1)(a) is not cognizable on habeas review.  Hicks v. Collins, 384 F.3d 204, 220 (6th Cir. 2004), cert. denied, 125 S.Ct. 2260 (2005).  See generally Lewis, 497 U.S. at 780.

The respondent recognizes that Jones has an arguable due process claim, under Brady v. Maryland, 373 U.S. 83 (1963), but contends that it is not a true Brady claim because the comments at issue were not favorable to the defense, plus the court gave a curative instruction to the jury to disregard the objectionable statements.  (Doc. 7, at 27-29.)

This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Jacobs, 265 F.3d at 415.  To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law.  Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).  Jones did not do so, thus he has not exhausted this claim.

Even if Jones had fairly presented the claim, he would not succeed on the merits.  "Brady requires that the government turn over evidence in its possession to the defense that is both favorable to the accused and material to guilt or punishment."  Hicks, 384 F.3d at 220 (citing Brady, 373 U.S. at 87).

According to the state court, after a police detective read the defendant's written statement into the record, the prosecutor asked whether there were

additional oral statements, namely, regarding whether Jones had called the police.

After a sidebar, the testimony continued:

> Q. I believe my question was:  Was there any additional question asked of [Jones] that was not incorporated in the written statement?
>
> A. Yes.
>
> Q. And what question was asked of him?
>
> A. Well, when he was explaining to me what happened and he said they ran to get their guns
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Let her finish. Overruled.
>
> A. I said, Why did you go and get your guns, why didn't you call the police instead.
>
> Q. And what was [Jones'] response?
>
> A. He said, no, they would have been gone by the time the police got here. And I said, well, did you want them to be gone or did you want to kill them. And he didn't answer me.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: That portion will be sustained. The jury is instructed to disregard those comments.

(RX 8, at 7-8; Jones, 2002 WL 31478933, at *3-*4, citing Tr. 1245-1246.)

 As noted by the respondent, the comments at issue were not favorable to the defense.  Pursuant to Brady, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Hicks, 384 F.3d at 220 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  Since Jones allegedly uttered these statements, there is no Brady violation, because he could have advised his counsel

of them.  Id. at 220-221.  Further, the court gave a curative instruction regarding the objectionable portions.  (RX 8, at 9; Jones, 2002 WL 31478933, at *4.)

Habeas relief cannot be granted on the third ground because any Brady claim was not fairly presented to the state courts.  Baldwin, 541 U.S. at 29; Jacobs, 265 F.3d at 415.


## VII.  FELONY MURDER

The fifth and seventh grounds of the petition contest the validity of the indictment for felony murder.  The state court recognized that the Sixth Amendment requires that an accused must have notice of the offenses charged against him.  The issue was whether an indictment for felony murder must specify the underlying felony.  (RX 8, at 9; Jones, 2002 WL 31478933, at *4.)

The Supreme Court has stated that, generally, "the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings."  Knewel v. Egan, 268 U.S. 442, 446 (1925).  The sole Constitutional issue is whether the indictment provides the defendant with sufficient information of the charged offense, to enable him to defend himself against the accusations.  Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002), cert. denied, 540 U.S. 853 (2003); Blake v. Morford, 563 F.2d 248, 250 (6th Cir. 1977), cert. denied, 434 U.S. 1038 (1978).  See also Cole v. Arkansas, 333 U.S. 196, 201 (1948);  Hartman v. Lee, 283 F.3d 190, 195 n.5 (4th Cir. 2002), cert. denied, 537 U.S. 1114 (2003).  "Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas

proceeding." <u>Roe</u>, 316 F.3d at 570 (quoting <u>Mira v. Marshall</u>, 806 F.2d 636, 639 (6th Cir. 1986)).

According to the state court of appeals:

The murder statute, R.C. 2903.02, under which the state charged Jones, provides, in part:

"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903 .04 of the Revised Code."

Here, the record reflects that Jones' indictment stated that he, on or about August 15, 2001, "unlawfully did cause the death of Warren Culbreath, as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, in violation of Section 2903.02 of the Revised Code."

(RX 8, at 11; <u>Jones</u>, 2002 WL 31478933, at *5.)

Thus, the state court noted that the language of the indictment paralleled the language of the statute, and found that Jones had proper notice of the charges against him.  <u>Id.</u>  Although recognizing the Sixth Amendment requirement of notice, the court's analysis involved state law.  Under Ohio law, an indictment for murder need not set forth the manner in which the death was caused.  (RX 8, at 10; <u>Jones</u>, 2002 WL 31478933, at *5, quoting Ohio Rev. Code § 2941.14.)  Jones had sufficient information of the charged offense to enable him to defend himself.

To obtain habeas relief on his claim, Jones must establish that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Under  the "contrary to" clause, this court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  <u>Price</u>, 538 U.S. at 640; <u>Williams</u>, 529 U.S. at 412-13.

Neither situation applies here.  Jones has not pointed to a Supreme Court case which involves a set of "materially indistinguishable" facts, nor has he shown that the state court ruling contradicted Supreme Court case law.  <u>See generally</u> doc. 1, memo, at 21-23, 25-26.


## VIII.  LESSER INCLUDED OFFENSE

The sixth ground of the petition is that Jones was denied due process of law when the court would not instruct the jury on any lesser included offense.  Jones argues that he has a constitutional right to an instruction on a lesser included offense, and stresses the issue of intent.  (Doc. 1, memo, at 23-24.)

The state court of appeals found that Jones had requested instructions on reckless homicide and negligent homicide.  The court relied on state law to find that negligent homicide is not a lesser included offense of murder, because the greater offense can be committed without the lesser offense of negligent homicide also being committed.  (RX 8, at 19; <u>Jones</u>, 2002 WL 31478933, at *9, citing <u>State v. Deem</u>, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988) (syllabus).)

Regarding reckless homicide, the state court found that although it was a lesser included offense, instructions were not warranted, "because the jury could not have reasonably concluded that the evidence presented in this case supports a conviction for reckless homicide but not murder under R.C. 2903.02(B)."  (RX 8, at

20; Jones, 2002 WL 31478933, at *9, citing State v. Kidder, 32 Ohio St.3d 279, 513 N.E.2d 311 (1987).)

Jones asserts that "[i]t is a matter of constitutional right that a defendant receive instructions on a lesser included offense."  (Doc. 1, memo, at 24.)  This assertion misstates the law.

The Supreme Court has held that due process requires a lesser included offense instruction in a capital case "only when the evidence warrants such an instruction."  Hopper v. Evans, 456 U.S. 605, 611 (1982).  The majority view, shared by the Sixth Circuit, is that the failure to instruct on lesser included offenses in noncapital cases, such as this, is not cognizable in federal habeas cases.  Bagby v. Sowders, 894 F.2d 792, 795-797 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).  Also, the allegation that an instruction may be incorrect under state law is not a basis for habeas relief.  Todd v. Stegall, No. 00-2203, 2002 WL 554500 (6th Cir.  Apr. 12, 2002) (per curiam), cert. denied, 537 U.S. 981 (2002) (citing Estelle, 502 U.S. at 71-72).

Even assuming arguendo that such a due process claim is viable under federal habeas corpus, Jones would be limited to asserting that a lesser included offense instruction is required if warranted by the evidence.  See, e.g., Paulding v. Allen, 393 F.3d 280, 283 (1st Cir. 2005).  The determination of whether a defendant is entitled to a instruction on a lesser included offense is a factual determination, thus a habeas petitioner must rebut the state court's finding under the "clear and convincing evidence" standard under 28 U.S.C. § 2254(e)(1).  Campbell v. Dretke, No. 04-70005, 2004 WL 2830837 (5th Cir. Dec. 9, 2004), cert. denied, 126 S.Ct. 649

(2005) (citing <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 757 (5th Cir. 2000), <u>cert. denied</u>, 532 U.S. 915 (2001)).

In this case, the state court of appeals determined that the jury could not have reasonably concluded that the evidence supported a conviction for reckless homicide but not murder.  (RX 8, at 20; <u>Jones</u>, 2002 WL 31478933, at *9.)  Jones has failed to present "clear and convincing evidence" to rebut the state court's determination that he was not entitled to a lesser included offense instruction.  <u>See generally</u> doc. 1, memo, at 23-24; doc. 11, at 2.

Jones has failed to establish that the state court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## IX.  TRANSFERRED INTENT

The eighth, ninth and tenth claims of the petition involve transferred intent. Jones characterizes the doctrine of transferred intent as a "non-offense," and argues that the court's instructions "constructively amended the indictment and the statute."  (Doc. 1, memo, at 28, 30.)  Jones also complains that the jury instructions referred to the death of "an innocent child,"  arguing that:

> There is no statutory requirement which makes a defendant responsible morally where "an innocent child" is injured or killed.  The statute specifically requires that such conduct be defined as an offense.

<u>Id.</u> at 27.  Jones asserts as well that "an accidental shooting" is not a crime.  <u>Id.</u> at 29.

Jones challenges the following jury instruction, as reported by the state court of appeals:

> The doctrine of transferred intent indicates where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended and did harm the same person.
>
> A person cannot escape the legal and moral responsibility of his or her acts simply because, he, the intended victim, escapes harm while an innocent child is seriously injured.

(RX 8, at 15-16; <u>Jones</u>, 2002 WL 31478933, at *7, citing Tr. 1559-1560.)

The Due Process Clause prohibits a state from convicting a person of a crime without proving all the elements of the crime beyond a reasonable doubt.  <u>Fiore v. White</u>,  531 U.S. 225, 228-229 (2001).  Thus, the elements of the crime, although a state law question, are necessarily involved in the due process analysis.  <u>Alicea v. Wilson</u>, No. 4:04 CV 439, 2005 WL 2280281, at *6 (N.D. Ohio Sept. 19, 2005).

Under Ohio law, felony murder is "a killing as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree, e.g., felonious assault."  <u>State v. Miller</u>, 96 Ohio St.3d 384, 389-390, 775 N.E.2d 498, 504 (2002); Ohio Rev. Code § 2903.02(B).  In <u>Miller</u>, the court discussed the *mens rea* necessary to commit felony murder, based on a felonious assault:

> Felonious assault is defined as *knowingly* causing, or attempting to cause, physical harm to another by means of a deadly weapon.  A person acts *knowingly, regardless of purpose,* when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist.

Miller, 96 Ohio St.3d at 390, 775 N.E.2d at 504 (emphasis in original; internal citations omitted).  Addressing the circumstances of the case before it, the Miller court continued:

> If defendant knowingly caused physical harm to his wife by firing the gun at her through a holster at close range, he is guilty of felonious assault.  The fact that she died from her injuries makes him guilty of felony murder, regardless of his purpose.

Id.

In his case, Jones points out that there was no direct evidence on intent. (Doc. 1, memo, at 24.)  This is not unusual, as  recognized in the case law provided by Jones himself.  See, e.g., State v. Huffman, 131 Ohio St. 27, 1 N.E.2d 313 (1936) (syllabus) (intent can be established through circumstantial evidence).  See also State v. Talley, No. 97-L-169, 1998 WL 684267 (Ohio Ct. App. Sept. 25, 1998) (jury could reasonably infer intent to kill where shots fired at person from deadly weapon).

In Bradshaw v. Richey, __ U.S. ___, 126 S.Ct. 602 (2005) (per curiam), the Supreme Court noted that the Ohio high court had provided an authoritative interpretation of the applicability of transferred intent in a felony murder case:

> The fact that the intended victims escaped harm, and that an innocent child . . . was killed instead, does not alter [defendant's] legal and moral responsibility.  "The doctrine of transferred intent is firmly rooted in Ohio law."  Very simply, "the culpability of a scheme designed

to implement the calculated[2] decision to kill is not altered by the fact
that the scheme is directed at someone other than the actual victim."

Bradshaw, 126 S.Ct. at 603-604 (quoting State v. Richey, 64 Ohio St.3d 353, 364,

595 N.E.2d 915, 925 (1992), cert. denied, 507 U.S. 989 (1993) (internal citations

omitted)).  See also Hopkins v. Reeves, 524 U.S. 88, 91-92 (1988) (intent to kill is

conclusively presumed if state proves intent to commit underlying felony).

Here, the evidence at trial showed that Jones admitted that he fired a deadly

weapon at the occupants of an automobile (who had also been firing at him).  (RX 8,

at 4, 17; Jones, 2002 WL 31478933, at *1-*2.)  The state court of appeals found that

"the [trial] court properly instructed the jury on transferred intent."  (RX 8, at 18;

Jones, 2002 WL 31478933, at *8.)  Thus, the court's instruction was found to be

proper under Ohio law.  Contrary to the petitioner's contention, the doctrine of

transferred intent  was a proper element of the offense alleged.

Jones has failed to establish that the state court's decision on the issue was

contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States.


## X.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The twelfth ground of the petition is that Jones was denied the effective

assistance of trial counsel in violation of his Sixth and Fourteenth Amendment

---

[2]The Richey court speaks of a "calculated" decision, because the defendant
Richey was convicted of aggravated felony murder, which involves the element of
calculation.  Contrast Ohio Rev. Code § 2903.01 with Ohio Rev. Code § 2903.02.
Jones was not convicted of aggravated felony murder, thus calculation was not at
issue.

rights.  Jones claims ineffectiveness in several areas:  failure to request a separate

trial, failure to file a motion to suppress, failure to request an instruction on

accident, and an improper concession of guilt.  (Doc. 1, memo, at 34-39.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is

the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437

(6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  See

also Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).  In Strickland, the

Supreme Court formulated a two-part test for examining an ineffective assistance of

counsel claim.  Id. (citing Strickland, 466 U.S. at 691).

First, the petitioner must show that:

" . . . counsel's representation fell below an objective standard of
reasonableness. Judicial scrutiny of counsel's performance must be
highly deferential, and a fair assessment of attorney performance
requires that every effort be made to eliminate the distorting effects of
hindsight, to reconstruct the circumstances of counsel's challenged
conduct, and to evaluate the conduct from counsel's perspective at the
time."

Miller v. Webb, 385 F.3d 666, 672 (6th Cir. 2004) (quoting Strickland, 466 U.S. at

689).  In order to avoid second-guessing counsel's decisions, "a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action might be considered sound trial

strategy."  Frazier v. Huffman, 343 F.3d 780, 794 (6th Cir. 2003), cert. denied, 541

U.S. 1095 (2004) (quoting Strickland, 466 U.S. at 689, internal quotation marks

omitted); Washington, 228 F.3d at 702.

In addition, any deficient performance alone is not sufficient to grant relief on a claim for ineffective assistance of counsel.  Strickland's second prong requires that counsel's deficiency must have actually caused prejudice to the petitioner.  Joshua, 341 F.3d at 437.  The second requirement is that the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Frazier, 343 F.3d at 794 (quoting Strickland, 466 U.S. at 694); Washington, 228 F.3d at 702.

In the habeas context, this court considers petitioner's claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable."  Washington, 228 F.3d at 702.  The court will examine the state court rulings under these standards.

The state court correctly outlined the Strickland factors.  (RX 8, at 22; Jones, 2002 WL 31478933, at *10.)  Each aspect of the ineffectiveness claim will be addressed separately.

### A.  Failure to Request Separate Trial

Jones was tried with two other defendants, and he argues that each defendant gave a statement which implicated the others.  He contends that counsel should have requested an instruction that any statement given by a defendant should only be considered against that defendant.  (Doc. 1, memo, at 34.)

On direct appeal, the state court noted that:

The decision for Jones to be tried with his two codefendants was a tactical decision within the range of professionally reasonable judgment. Even if we consider this strategic decision questionable, the

record shows that the state had presented evidence to show that Jones
grabbed a gun hidden in the driveway of 11811 Kelton, that gun shots
had been fired from the vicinity of 11811 Kelton, that a 7.62 round
bullet killed Warren, that police found a 7.62 shell casing in the area
around 11815 Kelton, that Jones told Huron Hill that he fired
gunshots at the white vehicle, and that the fatal shot came from the
direction of Kelton Avenue. As ample evidence existed for the jury to
convict Jones even without his co-defendants' statements, we cannot
say that but for the failure to request a separate trial, the outcome of
the trial would have been different.

(RX 8, at 23; Jones, 2002 WL 31478933, at *10.)  The state court's application of

Strickland to this issue was not objectively unreasonable.

### B.  Failure to Fail Motion to Suppress

Jones contends that he was arrested as the result of an anonymous tip, and

that his arrest was unconstitutional because it lacked probable cause.  (Doc. 1,

memo, at 35-37.)  Jones asserts that his interview and statement occurred after his

arrest.  Id. at 35.  Thus, "the legality of the arrest and the subsequent statement

should have been the subject of a motion to suppress."  Id.

On this issue, the state court ruled that:

Even where a motion to suppress is supported by some evidence in the
record, we presume that defense counsel was effective if the defense
counsel could reasonably have decided that the filing of a motion to
suppress would have been a futile act.

(RX 8, at 23-24; Jones, 2002 WL 31478933, at *11.)  Here, the court found that the

police brought the three defendants to the police station for the purpose of

interviewing them, but that they were booked  "only after they gave a statement

describing their participation in the incident.  Thus the record shows that Jones'

arrest was based on information he himself provided to the police, not based on an

anonymous tip."  (RX 8, at 24; Jones, 2002 WL 31478933, at *11.)

Although Jones disputes the state court's finding on the timing of his arrest, the court made a factual finding on that issue, based on the evidence presented. Jones refers to two portions of a police detective's testimony in the trial transcript (doc. 1, memo, at 35):

> Q.  Now, at what point did you become aware of the names of these three defendants?
>
> A.  Well, we received a Crime Stopper tip and we received an anonymous call.
>
> * * * * *
>
> Q.  And did there come a time when you had an occasion to meet with these defendants?
>
> A.  Yes.
>
> Q.  How did that come about?
>
> A.  On the day we arrested them.

(Doc. 10, Tr., at 1231.)  The testimony subsequently continued:

> Q.  If I understood you correctly, Detective, when you were there taking the statements from those individuals over there, you arrested them prior to taking the statements, right?
>
> A.  They were brought in.
>
> Q.  Were they arrested?
>
> A.  Not until we talked to them to see.
>
> Q.  Did you tell us earlier that they were arrested and brought to the Homicide Unit?
>
> A.  They weren't arrested, the ROPE Unit picked them up for us.
>
> Q.  Were they handcuffed?

A.  Truthfully, I don't know.  The ROPE Unit brought them in.  I don't know.

Q.  And you took statements from all three of them?

A.  Yes.

Q.  And immediately after being done with the statements they were booked, right?

A.  Yes.

Q.  Did that indicate that you intended to book them whether they gave statements or not?

A.  After what they told me, that is what made us decide to book them.

(Doc. 10, Tr., at 1286-1287.)

Factual findings made by the state courts are presumed correct, and the presumption of correctness may be rebutted by the petitioner only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See, e.g., Lorraine, 291 F.3d at 422; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998), cert. denied, 527 U.S. 1040 (1999).  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and that presumption of correctness extends to factual findings of a state appellate court based on the state trial record.  Bowling v. Parker, 344 F.3d 487, 497 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004) (citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)).  See also Hernandez v. New York, 500 U.S. 352, 366 (1991).

The testimony referenced by Jones does not provide a clear and convincing rebuttal of the state court's factual finding.  The court determined that, because the record evidence did not justify the filing of a motion to suppress, Jones had not

shown that his attorney was ineffective.  The state court's application of <u>Strickland</u> to this issue was not objectively unreasonable.

### C.  Failure to Request Instruction on Accident

Jones argued that counsel was deficient for not requesting an instruction on accident.  Jones states:  "Clearly the death of [the victim] was not intended as he certainly was not an intended victim."  (Doc. 1, memo, at 38.)

The court of appeals ruled that the theory of accident was inconsistent with the self-defense claim Jones presented at trial, and further, Jones "had presented no evidence at trial to show he fired shots accidentally; therefore, an instruction on accident is not warranted."  (RX 8, at 24-25; <u>Jones</u>, 2002 WL 31478933, at *11.)

Again, the state court's application of <u>Strickland</u> in this instance was not objectively unreasonable.

### D.  Improper Concession of Guilt

Finally, Jones asserts that his counsel improperly conceded that "this case is clearly murder."  (Doc. 1, memo, at 38, citing Tr., at 1513.)  The portion of the closing argument at issue was quoted in the appellate opinion:

> As you recall during voir dire, I asked you if you had any emotional reason because this case is a murder case that you could not come in with a finding of not guilty, and your response was no you could do so. I suggest to you because this case is clearly murder, but it's solely about how it happened, that the photos you will see of the autopsy, the clothes you will see are really irrelevant. They are designed to appeal to your emotion. I beg you, please don't allow that to happen.

(Doc. 10, Tr., at 1513.)

The appellate court ruled as follows:

> We do not perceive the reference to murder here to constitute a
> concession of guilt, especially when the transcript reveals that during
> closing argument, counsel argued that the defendants had acted in self
> defense . . . and proclaimed Jones' innocence throughout his argument.
>
> Thus, the record rebuts Jones' claim that his counsel conceded murder.

(RX 8, at 25; <u>Jones</u>, 2002 WL 31478933, at *11.)  Once more, this court cannot find

that the state court's application of <u>Strickland</u> to the facts was objectively

unreasonable.

Overall, Jones has failed to establish that the state court's decisions on the

issue of ineffectiveness of counsel were contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court.


## XI.  IMPROPER SENTENCING

The thirteen and last ground of the petition alleges a violation of due process

of law and equal protection of the law because Jones was sentenced for murder "for

the functional equivalent of Involuntary Manslaughter."  Jones complains that no

underlying offense was alleged in the indictment, but that his offense "was the

functional equivalent of Involuntary manslaughter."  (Doc. 1, memo, at 39.)

The state court characterized the claim thus:

> Jones argues R.C. 2903.02(B) violates the constitutional guarantee of
> due process and equal protection because it does not require the state
> to prove the culpable mental state of purpose and also because it
> prohibits the same conduct as the involuntary manslaughter statute
> but imposes a more severe punishment.

(RX 8, at 27; <u>Jones</u>, 2002 WL 31478933, at *12.)  The court pointed out that §

2903.02(B) has survived numerous challenges to its constitutionality.  (RX 8, at 28;

<u>Jones</u>, 2002 WL 31478933, at *13 (citing cases).)

Jones had argued that the due process violation consisted of the lack of proof

of a culpable mental state.  The court noted that "the intent to kill is conclusively

presumed so long as the state proves the required intent to commit the underlying

felony."  <u>Id.</u> (quoting <u>State v. Hayden</u>, No. 99-L-037, 2000 WL 973413, at *4 (Ohio

Ct. App. July 14, 2000)).  <u>See also</u> <u>Hopkins</u>, 524 U.S. at 91-92 (1988) (same).  This

court has already discussed Supreme Court review of the related doctrine of

transferred intent.  <u>See, e.g.</u>, <u>Bradshaw</u>, 126 S.Ct. at 603-604.  Jones has failed to

show a due process violation on the issue of intent.

As to the equal protection claim, the state court considered whether the

felony murder statute (Ohio Rev. Code § 2903.02(B)) required the proof of an

additional element beyond that required in the involuntary manslaughter statute (§

2903.04(A)):

> A comparison . . .  reveals that they do not prohibit identical activity
> and require identical proof.  Causing another's death as a proximate
> result of committing any felony, which is sufficient to prove
> involuntary manslaughter, is not always or necessarily sufficient to
> prove felony murder.  In order to prove felony murder the State is
> required to prove more: that the underlying felony is an offense of
> violence, defined in R.C. 2901.01(A)(9), that is a felony of the first or
> second degree, and not a violation of R.C. 2903.03 or 2903.04.
>
> While proof of felony murder, R.C. 2903.02(B) would always and
> necessarily prove involuntary manslaughter, R.C. 2903.04(A), the
> converse is not true. Proof of involuntary manslaughter is not
> sufficient to prove felony murder except in those particular cases
> where an additional requirement is met:  the underlying felony is an
> offense of violence that is a felony of the first or second degree. Because

> felony murder requires proof of this additional requirement, [the]
> equal protection argument lacks merit.

(RX 8, at 29-30; <u>Jones</u>, 2002 WL 31478933, at *13-*14, quoting <u>State v. Dixon</u>, No.

18582, 2002 WL 191582, at *3 (Ohio Ct. App. Feb. 8, 2002)).

Where an act is a possible violation of more than one criminal statute, the

government has discretion as to whether to prosecute and what charges to bring, as

long as it does not discriminate against any class of defendants.  <u>United States  v.</u>

<u>Batchelder</u>, 442 U.S. 114, 123-124 (1979).  The Equal Protection Clause prohibits

selective enforcement "based upon an unjustifiable standard such as race, religion,

or other arbitrary classification."  <u>Id.</u> at 125 n.9 (quoting <u>Oyler v. Boles</u>, 368 U.S.

448, 456 (1962).  Jones does not claim that his prosecution involved any such

discrimination.

Jones has failed to establish that the state court's decision on this claim was

contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States.


## X.  SUMMARY

The petition for a writ of habeas corpus should be denied.  The third ground

of the petition was not fairly presented to the state courts.  The eleventh ground of

the petition was procedurally defaulted.  As to the remaining grounds, as discussed

above, Jones has failed to establish that the state court's decisions on the various

issues were contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States.

<u>RECOMMENDATION</u>

It is recommended that the petition be denied.


Dated:  __May 19, 2006__          ___/s/ Kenneth S. McHargh___
                                  Kenneth S. McHargh
                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).